Case No. 3 for this morning is Jacks v. DirectSat. Good morning. My name is Teresa Beckvar and I represent the plaintiffs in this appeal. I will call you when the case is ready. I'm sorry. Ms. Beckvar. May it please the court. This appeal concerns whether the district court committed reversible error when it decertified a class of satellite technicians after reassignment to a new district court judge. The district court's decision should be reversed for three key reasons. First, in decertifying the class, the court granted no deference or really any consideration at all to the prior district court judge's opinion certifying liability issues under rule... So what? You filed a pretrial plan, right? And in response to the pretrial plan, the judge decertified the class. Judge Gottschall may have done that. What difference does it make that she... that was at the very, very beginning of the case? Right. Well, first of all, the decision... The first decision certifying the case was in 2012 and that was at the very beginning of the case. The second decision of Judge Gottschall was in 2015. That decision decertified the case as to damages following the Espen Scheid ruling in this court and then recertified it as to liability issues under Rule 23C.3. Between that decision and Judge Packle's decision decertifying the case in full, nothing changed with regard to the facts, to the... regard to the law. Let me call up Judge Kirsch's question a different way. Sure. Rule 23 says, we have said, that class certification decisions are tentative and they're always subject to reexamination as the case goes along. So what's wrong with reexamining them as the case goes along? There's absolutely nothing wrong with reexamining the... Exactly. ...issues as the case goes along. So you should move on to some other argument. Yes, Your Honor. I just want to make it clear that, you know, Rule 23 opinions are interlocutory orders like anything else. And they are subject to revision. But this court has held in the Williams versus... You can use your time as you wish, but I'm trying to help you out. Yes. Thank you, Your Honor. Turning to the second point. The District Court erred in finding that none of the certified issues are capable of classified resolution. If there's one key takeaway for this court today, it's that there's one issue alone in this case that justifies continued certification of the class. And that issue is whether the plaintiff's time spent commuting to and from their work sites each day is compensable under the Illinois minimum wage law. This issue will resolve an issue that is central to the validity of the plaintiff's unpaid overtimes in one stroke as the Supreme Court held in Dukes. So, I guess, Counsel, the... You know, I know in the briefs, you and the plaintiffs kind of characterize this as a simple case where there is a company uniform policy that drivers start their clock when they reach the first job, turn off when they leave the last job, and then anything outside of that would be overtime or compensable and that wasn't counted. But here... I mean, and that might make sense if you have someone working at, I don't know, at a bank or at a bakery or something where they actually log in, right? They clock in. But here, my understanding is that directs that compensated their drivers through a piece rate system, is that right? That's correct, Your Honor. Where they are compensated by the particular task that they do and then that total amount is divided by the number of hours worked to come up with an hourly wage that directs that then uses to determine whether or not they've met their obligations to pay minimum wage. Is that more or less correct? More or less. Okay. And I know, Judge, you're familiar with these facts. Yes. It's been a while, but yes. And I wonder whether that doesn't complicate things, even with regard to class issue number two, that is the time commuting before work, as you call it, and after work, because it's hard to know whether or not an individual, number one, has met the 40 hours or more, and number two, whether they received enough compensation during that time period to qualify to be injured as part of their jobs. And so I was wondering if you can address how the piece rate system kind of dovetails with your theories with regard to compensability or if it doesn't matter. Well, I can address that, but first I want to say that the issue with the math, a more simple way to put it, behind what people's damages are, that was taken out of the equation by Judge Gottschall when she decertified the class for damages and the math and recertified it with regard to certain liability issues. But practically speaking, every wage case involves weeks, potentially involves weeks where certain class members don't work 40 hours or they work right on the edge of 40 hours, and if you add 30 minutes to that, it pushes it over. Those calculations can be done on a class-wide basis, and they often are just based on spreadsheets and records from the defendants of what people were paid, what we know in this case, what exact piece rate every single technician was paid every single week that they worked. And it's just a matter of doing the math to figure out how many weeks were recorded or how many hours were recorded, how many hours of commuting time for this issue would be added to that each week and how that would play out. But what complicates that is Judge Packholt's finding that one of the driving forces of how drivers recorded, well, how drivers received their tasks, recorded their tasks, and recorded their time was driven really by their individual superiors rather than kind of a company-wide dictates, right? And that's a factual finding she found. And I wonder if you could address that. Yes. So that's my third main point I wanted to address today was that Judge Packholt erred in resolving that factual finding on the merits against plaintiffs. As this court knows— I take it, though, that you concede that, well, I mean, our law is that a district judge can review the merits so long as it's necessary to resolve the issue of class certification. Right, right. So at class certification, the court's role is to determine whether there are issues capable of proof at trial through evidence that is common to the class. That's the black-letter rule here. And the district court discounted plaintiff's record evidence that was common to the class that direct SAT instituted uniform timekeeping policies and practices that were exclusively established by high-level management. Well, it's not that she ignored it. It's that she kind of looked at that, looked at plaintiff's evidence, looked at direct SAT's evidence, and made the preliminary factual finding necessary to decide whether or not continued certification was appropriate. Isn't that what she was permitted to do? She is permitted to do that, but she is not permitted to weigh plaintiff's evidence that these policies came from the top and supervisors were not permitted to deviate from them and say, well, there's also some other evidence here that says supervisors were permitted to deviate from those policies. That question, you know, whether these uniform policies exist or not, that's a common question common to the class. It's not going to be... Do you think Walmart against Dukes was wrongly decided? No, of course not. Because in that case, the Supreme Court looked at that kind of evidence, which you say a district judge is forbidden to look at. Right. And this court in... I'm not asking about this court. I'm asking about the Supreme Court's decision. Right. I want to point to a case where this court dealt with... I am not asking about this court. I'm asking you to discuss Walmart against Dukes. You can't do that by discussing a decision of the Seventh Circuit. Right. So in Dukes, the court held that cases where low-level managers use their given discretion to make individual decisions without guidance from an overarching company policy do not satisfy commonality because the evidence varies from plaintiff to plaintiff. The Bell Court here, the Seventh Circuit, in that case, they said in that case... You're not getting my question. You have said that there's a particular kind of evidence about the way in which a policy is administered that a district judge just can't look at. And I then ask, well, how is that consistent with Walmart against Dukes? Because the Supreme Court looked at precisely that kind of evidence. That's what I'm asking you to discuss. Right. And in Walmart versus Dukes, there was evidence that each individual supervisor had discretion. Here... And the claims in that case were challenging those decisions. Here, it's the opposite. We are challenging DirectSAT's corporate policy that said the workday starts here, ends there. Anything outside of that is... What makes it forbidden for the district court to consider this matter? That's the question I'm asking. I understand your argument that having considered this matter, the district judge should have ruled in your favor. But you're making a different argument as well, that the district judge is forbidden to consider this. That's what I'm asking you to discuss. Where does that rule come from? And how is it consistent with Walmart against Dukes? That rule comes from this court's previous authority. It comes from the Bell case, which has said that evidence of the denial... Think of it this way. Think of the question this way. That in Dukes, the question was... One of the predicate questions that the Supreme Court had to decide was whether or not, looking at the evidence presented at the time, the decisions with regard to individual employees was made company-wide or by individual supervisors. The Supreme Court, as Judge Easterbrook noted, did that weighing itself and made that predicate factual finding. Here it seems like Judge Peckle did the same thing. She looked at the question of whether or not the actions of the drivers was caused or motivated by company-wide policy or whether it was motivated by their individual supervisors, and she made the predicate factual finding that, you know what, it was the latter. That, as Judge Easterbrook says, strikes me very similar to Dukes, and I'm wondering why you think it's different. It's different because the source of the plaintiff's claims is from an illegal policy. In Dukes, the source of the plaintiff's claims was from the decisions of the supervisors. We're not saying here that the supervisors instructed class members not to record their overtime. We're saying the policy of direct SAT that is in writing and comes from above instructed technicians not to record their overtime outside their regular workday. I'd like to reserve the rest of my time if you permit. Thank you, counsel. Thank you. Mr. Doherty. Please do not touch the microphone. I apologize, Your Honor. I thought it might extend. May it please the Court, my name is Colin Doherty. I'm here on behalf of the defendant's athletes in this case. As the questions from the panel have indicated, Judge Packwell did exactly what she is required and tasked to do by the longstanding precedent of this Court, including the Espensheet case. That is, on the eve of trial, she had plaintiffs or requested and ordered plaintiffs to provide a trial plan. That trial plan was not successful in describing how they could be successful in getting around the inherent variance issues. Similar to, as Your Honor pointed out, she reviewed both Espensheet, Your Honor's former opinion in the Northern District of Illinois, Judge Shaw's opinion in Meadows, and the Dukes case and made the predicate findings that that could not happen and therefore this case should be decertified. Mr. Doherty, I wonder if you could address one of the issues that kind of percolates in this case, which is the relationship between issue classes under Rule 23c-4 and the requirements of 23a and 23b. It seems to me that my impression of reading the transcript of Judge Packold's order was that she kind of viewed this case as a 23b-3 case because she went through all the various factors and decided on predominance as a whole. As you undoubtedly know, there's a bit of a disagreement among circuits with regard to how the 23b-3 should be regarded in relationship to 23c-4 classes. In that context, it seems to me that Judge Packold's decision, whatever you might think of the final result, kind of adopted what people have called the narrow approach of the Fifth Circuit. And I wondered what your thoughts are on whether her review was, you think, under 23c-4 or whether she was applying 23b-3. Well, I think she was applying both, Your Honor, and I think that was her requirement. She had before her a case unlike many of the 23c-4 cases, which are much earlier in the case. They are about resolving a specific issue that then ultimately will apply to the class members in some future separate damages trial. As sort of like Judge Gottschall, who structured her 2015 opinion, she acknowledged that at some point this case, the class members would be sort of decertified and sent to the wind to figure out how to come back and prove at minimum damages, if not liability. So those 23c-4 cases are often both earlier in the case. And in this case, one of the issues, what you think, too, is plaintiffs also never moved under 23c-4. Judge Gottschall did it on her own. But those cases are earlier. They're not as postured as this case was on the eve of trial, where the next procedural step in trial was trial, was trial on these issues. And her order on the trial plan specifically addressed how do you try these 14 issues. By her, do you mean Judge Gottschall or Judge Packle? I'm sorry, Judge Packle. Judge Packle's directive to the plaintiffs to provide a trial plan was a directive that said provide that trial plan on how you intend to prove these c-4 designated issues. They produced that trial plan and failed to do so under 23b-3 as well as 23c-4 because the proofs under 23b-3 are what would prove the c-4 issues that Judge Gottschall had allowed to continue after 2015. So in this case, whether you want to call it that she followed the narrow approach or she followed the Espensheet approach in the sense of this case tracked not only the same defendants, some of the same class members, but the same procedural posture, unlike those c-4 cases. But in Espensheet, that was a 23b-3 class, right, 23b-3 damages class. It wasn't a 23c-4 issues class. Yes, it was a 23b-3 class, but as Judge Posner indicated in that case, as Your Honor indicated in the former case, and as Judge Schall indicated in the Meadow case, even as Your Honor pointed out, the sort of alternative style of pay and pay reality in this case that there is no average technician that liability and damages are inextricably linked because you have to prove a case unlike your banking teller example. You have to show that you not only worked sometime beyond that was recorded, that that work was compensable, that you weren't compensated for it, and that time puts you beyond 40 hours or under minimum wage. That's the part that plaintiffs throughout their briefing sort of skip over, and that's one of the issues Judge Packwood pointed out, that the nature of the pay in these cases creates, makes there is no average technician. There is that damages and liability are inextricably linked, and I would offer that Judge Gottschall did what she was perfectly allowed, despite the fact that we obviously disagreed with it at the time, allowed and empowered to do in that she allowed, the case was not over, she allowed for three more years of discovery post that before the case was reassigned, and she gave plaintiffs the opportunity, given the unclear nature of a 23c-4 case in this circuit, to continue, and then Judge Packwood did exactly what she was empowered and allowed and apparently supposed to do in our view on the eve of trial, said, okay, how are you going to do it, plaintiffs? How are you going to satisfy your C-4 class now? And they couldn't do it, and she marked through her transcript order, and she explained that they couldn't do it, and did exactly what she is not only empowered to do but required to do under cases like the Dukes case and the Espensheet case in this circuit. And as our briefing states, we think particularly under an abusive discretion standard that her order should be affirmed and upheld, and if there's no further questions, we would rest on our papers.  Thank you, Your Honor. Ms. Bavar, anything further? Judge Lee, your comments hit the nail on the head when pointing out that Espensheet involved a case that did not involve issues certified under Rule 23, C-4. I want to address... But does the variance, quote-unquote variance, that Judge Posner talked about in Espensheet, does that also apply to trying to prove the various issues in the C-4 class? No, Your Honor, because each of those issues relate to direct set itself as it relates to its employees as a whole. Whether commuting time is compensable, the issue number two I spoke about before, involves every technician commuted. Should that have been compensable, that's an issue that is able to be solved on a class basis for every single person. And yet summary judgment was denied on that issue, right? Exactly. Summary judgment for plaintiffs was denied on that issue. And Judge Gottschall found there were issues of facts that a jury could resolve just on that issue class-wide. Thank you, counsel. Thank you. The case is taken under advisement and the court...